## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **MARC SCHULTZ, on behalf of himself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No.** |
| **v.** | ) ) ) | **COMPLAINT –** |
| | ) ) | **CLASS ACTION** |
| **EMORY UNIVERSITY,** | ) ) | **AND DEMAND FOR JURY** |
| **Defendant.** | ) ) | **TRIAL** |

Plaintiff Marc Schultz ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Emory University ("Emory" or "Defendant"), and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, and says:

## I.      NATURE OF THE CASE

1.      This is a class action brought on behalf of all people who paid tuition and fees for in-person undergraduate or graduate programs for the Spring 2020 academic semester at Emory, and who have been unable to receive the benefit of the education for which they paid, and/or the services for which their fees were paid,

due to Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic.

2.      While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Defendant has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution. Defendant has retained all tuition, fees, and related payments for the Spring 2020 semester, however, all or substantially all classes have been exclusively held online since on or about March 23, 2020.

3.      As a result of the closure of Defendant's facilities, Plaintiff has not received the educational services, access to facilities, and/or related opportunities for which Plaintiff and the putative class contracted and paid. Defendant has nonetheless retained the full tuition, fees and other payments made by Plaintiff and the putative class.

4.      Prior to the Spring 2020 semester, Defendant offered online education and typically charged far less for such services as compared to in-person instruction. This is due to the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction. Remote learning options cannot replace the comprehensive educational experience promised by Defendant. Access to facilities, materials, and faculty, and the opportunity for on campus living,

school events, collaborative learning, dialogue, feedback and critique are essential to the in-person educational experience. Plaintiff and the putative class contracted and paid for the full experience of academic life on Defendant's campus and remote online learning cannot provide the same value as in-person education.

5.    As a result, Defendant has financially damaged Plaintiff and the putative class members. Plaintiff brings this suit because Plaintiff and the class members did not receive the full value of the services for which they paid. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

6.    Defendant is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiff and the putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities that Defendant did not provide.

7.    Plaintiff seeks, for himself and the putative class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020

semester when Defendant ceased in-person classes, campus services and access to campus facilities.

## II.    JURISDICTION AND VENUE

8.    The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district.

10.    The Court has personal jurisdiction over Defendant because Defendant is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Defendant conducts substantial business in this district.

## III.    PARTIES

11.    Plaintiff Marc Schultz is a citizen and resident of the State of New York. Plaintiff's child was enrolled as a full-time student for the Spring 2020 academic semester at Defendant Emory University. Plaintiff paid approximately

$32,000 in tuition and fees to Defendant for the Spring 2020 semester, on behalf of his child.

12.    Defendant Emory University is a private educational institution that offers undergraduate and graduate programs across twelve schools and colleges. Founded in 1836, Defendant maintains campuses in several locations around the Atlanta metropolitan area. Approximately 15,451 students were enrolled to attend the school's graduate and undergraduate programs for the Fall 2019 term. As of August 31, 2019, Defendant reportedly had an endowment of $7.94 billion.[1]

13.    Upon information and belief, Defendant is eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based on enrollment numbers in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students.

## IV.    FACTUAL ALLEGATIONS

### A.    Closure of Campus and Suspension of In-Person Education

14.    Plaintiff and Class members are individuals who paid the cost of tuition, mandatory fees and other related costs, for themselves or on behalf of another individual, to attend undergraduate or graduate programs during the Spring 2020

---

[1] http://www.emory.edu/home/about/factsfigures/index.html

semester at Defendant.

15.     Plaintiff and Class members entered into a contract with Defendant whereby they would pay tuition, fees and other related costs and Defendant would provide in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms.

16.     Approximate tuition costs and fees charged by Emory University for undergraduate students to attend the 2019-2020 academic year totaled $72,604, broken down as follows:

- Tuition: $53,070

- Fees: $734

- Books: $1,224

- Housing: $8,638

- Food: $6,334

Emory University, "Cost of Attendance," at http://studentfinancials.emory.edu/cost-attendance.aspx.

17.     Emory University also has seven graduate and professional schools including the Goizueta Business School, Laney Graduate School, School of Law, School of Medicine, Nell Hodgson Woodruff School of Nursing, Rollins School of Public Health, and Candler School of Theology. Upon information and belief, these

graduate schools charge a range of tuition and fees from approximately $18,000 to $40,000 per semester.

18.     Upon information and belief, prior to the Spring 2020 semester Emory University offered online courses that cost far less than attending in-person classes on Defendant's campuses.

19.     On March 11, 2020, Defendant extended spring break in order to transition to remote learning on March 23, 2020. Defendant also directed that all students "residing in Emory residential facilities should collect belongings and move out of their spaces between now and Sunday, March 22 at 5:00 p.m." Defendant also suspended residential learning for the remainder of the semester and recommended the cancellation of all non-essential gatherings. Emory University, "Emory extends spring break, will transition to remote learning March 23," at https://news.emory.edu/stories/2020/03/coronavirus_remote_learning/campus.html (June 17, 2020).

20.     Subsequently, on or about March 23, 2020, Defendant closed all campus buildings and moved all or substantially all classes online, asking students not to return to campus for the remainder of the Spring 2020 semester.

21.     While this step to close campus and end in-person classes was necessitated by circumstances, it effectively breached or terminated the contract

Emory had with each and every student and tuition provider, who paid for the opportunity to participate fully in the academic life on the Emory campuses.

22.    Classes that continued were only offered in an online format, with no in-person instruction. Even classes for students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences) only had access to online education options.

23.    As a result of the closure of Defendant's campuses and facilities, Defendant has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative class contracted and paid.

24.    Defendant maintains that its contract with students and tuition providers remains in full effect and that it is continuing to uphold its side of the agreement. Defendant refuses to refund tuition and related expenses, purportedly based on its provision of online classes.

25.    In so doing, Defendant is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as full participation in the university's academic life.

26.    Plaintiff and members of the Class did not choose to attend and/or provide tuition for an online institution of higher learning, but instead chose to attend

Defendant's institution and enroll on an in-person basis.

**B.      Inferiority of Online Educational Experience**

27.    At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

a)    Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

b)    Specifically, students taking the in-person course earned roughly a B- (2.8 GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

c)    Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester;

d)    Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

28.     Defendant touts the value of its campus life, proclaiming "[w]e believe engagement in the residential experience contributes powerfully to the completeness of a liberal arts education resulting also in an affinity for the institution, a heightened value for the community, and a thirst for lifelong learning." Emory University, "Campus Life Vision and Mission," at http://campuslife.emory.edu/about/ (June 17, 2020).

29.     Emory also describes the "vision statement" for its campus life as "a community recognized internationally for advancing education into action and delivering world-class programs and services."

30.     Defendant also promotes its research capabilities, which were significantly curtailed by lack of access to laboratories, libraries and in-person access to faculty, saying, "Emory is one of the nation's leading research universities, building on an uncommon combination of **campus-based resources** and global partnerships." Emory University, "Research," at https://www.emory.edu/home/research/ (June 17, 2020).

31.     Similarly, Defendant states that its libraries rank "among the top 20 Association of Research Libraries (ARL) in North America" and that the libraries are "the intellectual commons for Emory University." Emory University, "Woodruff Library Building," at https://libraries.emory.edu/maps/woodruff-library-

building/index.html (June 17, 2020). Emory also describes its Robert W. Woodruff Library as a space that "brings together technology specialists and librarians in one facility to provide a range of services, such as collections, study space, research help, etc., to support the academic mission of Emory University." Emory University, "Robert W. Woodruff Library," at https://libraries.emory.edu/woodruff/index.html (June 17, 2020).

32.    Defendant claims on-campus living is an important part of students' learning experience, stating "[w]e intentionally provide diverse living-learning campus environments designed to promote sustainable, compassionate personal growth and development through collaboration among students, faculty, staff, and the community." Emory University, "Offices of Residence Life and Housing Operations, About Us," at https://housing.emory.edu/about/ index.html (June 17, 2020).

33.    The move to online only classes also deprived students of the opportunity to enjoy a wide variety of academic and student events, on-campus entertainment, and athletic programs.

34.    The online learning options Defendant offered for the Spring 2020 semester, though consistent with safety measures, cannot provide the academic and collegiate experience Defendant itself extolls as its signatures.

11

**C.    Lower Tuition for Online Education**

35.    For all the reasons Defendant highlights, in-person education is worth more than online education.

36.    Accordingly, the tuition and fees for in-person instruction at Emory are higher than tuition and fees for its own online classes and for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

a)    Face to face interaction with professors, mentors, and peers;

b)    Access to facilities such as libraries, laboratories, computer labs, and study rooms;

c)    Student governance and student unions;

d)    Extra-curricular activities, groups, intramural sports, etc.;

e)    Student art, cultures, and other activities;

f)    Social development and independence;

g)    Hands on learning and experimentation;

h)    Networking and mentorship opportunities.

37.    The fact that Emory students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in Emory's in-person, on-campus programs versus Emory's own

online learning program.

38.    For example, upon information and belief, Emory's cost per credit hour for in-person, on-campus classes was approximately $2,032, while Emory charges $1,327 per credit hour for online courses.

**D.    Damages**

39.    Through this lawsuit Plaintiff seeks, for himself and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided, accounting for the diminished value of online learning. Plaintiff seeks return of these amounts on behalf of himself and the Class as defined below.

## V.    CLASS ACTION ALLEGATIONS

40.    Plaintiff seeks to represent a class defined as:

> All persons who paid Emory University Spring 2020 semester tuition, fees, and/or room and board for in-person educational services and use of campus facilities that Emory University did not provide, and whose tuition and fees have not been refunded (the "Class").

Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and

13

their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

41.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

42.    **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

43.    **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a)    whether Defendant accepted money from Class members in exchange

for the promise to provide services;

b)      whether Defendant has provided the services for which Class members contracted;

c)      whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;

d)      whether Defendant is liable to Plaintiff and the Class for unjust enrichment.

44.     **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

45.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

46.     **Superiority.** A class action is superior to all other available means for

the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

47.    In the alternative, the Class may also be certified because:

a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant; and/or

b)    the prosecution of separate actions by individual Class members would

16

create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach of Contract

48.     Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

49.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

50.     Through the admission agreement and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with Defendant.

51.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide in-person education services,

17

including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 semester.

52.     Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for Spring 2020 semester tuition, fees and related expenses.

53.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above but has retained monies paid by Plaintiff and the Class for their Spring 2020 semester tuition, fees and related expenses.

54.     Plaintiff and members of the Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

55.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.

## COUNT II
**Unjust Enrichment**

56.     Plaintiff restates, realleges and incorporates by reference the allegations

contained in all preceding paragraphs of this complain as if fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of the members of

the Class against Defendant, and in the alternative to Count I.

58.     Plaintiff and members of the Class conferred a benefit on Defendant in

the form of monies paid for Spring 2020 semester tuition, fees and related expenses

in exchange for certain service and promises. Tuition for the Spring 2020 semester

was intended to cover in-person educational services from January through May

2020.

59.     Defendant voluntarily accepted and retained this benefit by accepting

payment.

60.     Defendant has retained this benefit, even though it ceased providing the

full education, experience, and services for which the tuition and fees were collected.

61.     The online education services Defendant substituted for the in-person

education for which Plaintiff and class members paid has a substantially lesser value,

but Defendant has nonetheless retained full payment.

62.     It would be unjust and inequitable for Defendant to retain benefits in

excess of the services it provided, and Defendant should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.    For actual and compensatory damages in amounts to be determined by the Court and/or jury;

D.    For prejudgment interest on all amounts awarded;

E.    For an order of restitution and all other forms of equitable monetary relief;

F.    For injunctive relief as pleaded or as the Court may deem proper; and

G.    For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

H.    All other relief to which Plaintiff and members of the Class may be

entitled by law or in equity.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: June 24, 2020

        By:  /s/ Jeffrey B. Sand
           Jeffrey B. Sand
           Georgia Bar No. 181568
           WEINER & SAND LLC
           800 Battery Ave.
           Suite 100
           Atlanta, Ga. 30339
           Tel: (404) 205-5029
           Fax: (866) 800-1482
           js@atlantaemployeelawyer.com

           James A. Francis (pro hac vice motion to be filed)
           John Soumilas (pro hac vice motion to be filed)
           FRANCIS MAILMAN SOUMILAS, P.C.
           1600 Market Street, Suite 2510
           Philadelphia, PA 19103
           Tel: (215) 735-8600
           Fax: (215) 940-8000
           jfrancis@consumerlawfirm.com
           jsoumilas@consumerlawfirm.com

Edward A. Coleman (pro hac vice
motion to be filed)
Lewis Saul (pro hac vice motion to
be filed)
LEWIS SAUL & ASSOCIATES,
P.C.
29 Howard Street, 3rd Floor
New York, NY 10013
Tel: (212) 376-8450
ecoleman@lewissaul.com
lsaul@lewissaul.com